UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

DIAMOND TUCKER ST. PROPERTY, LLC,
REDEMPTION, LLC, and WESTFAIR, LLC.

Plaintiffs

v.

KAREN PUPOVIC and ISMET PUPOVIC,

Defendants

**VERIFIED CIVIL COMPLAINT FOR RELIEF FROM JUDGMENT FOR FRAUD ON THE COURT, DECLARATORY AND INJUNCTIVE RELIEF (FED. R. CIV. P. 60(d)(3))**

**INTRODUCTION AND PRELIMINARY STATEMENT**

1. Plaintiffs, Diamond Tucker St. Property, LLC ("DTS"), Redemption, LLC ("Redemption") and Westfair, LLC ("Westfair), bring this independent action under Fed. R. Civ. P. 60(d)(3) to set aside a state-court judgment procured through fraud on the court.

2. The judgment was obtained by deliberate perjury, knowing attorney endorsement of false testimony, and materially false and misleading expert evidence. The state court expressly relied on this tainted evidence.

3. Defendants have used the fraudulent judgment to record and maintain a *lis pendens* and a Judgment lien against a property located at 101 Northwood Drive, Easton, Connecticut. These encumbrances currently render the property unfinanceable, unmarketable and valueless through the lis pendens and Judgment lien procured by fraud on this court.

4. Plaintiffs seek narrow, targeted equitable relief, namely: (1) a declaration that the judgment is void; (2) injunctions halting any collection activity and/or enforcement of the judgment, *lis pendens*, and Judgment lien; and (3) ancillary relief confirming that these encumbrances are void and of no effect.

1

5. Plaintiffs do not seek damages in this action. Rather, Plaintiffs reserve the right to seek damages separately at an appropriate time.

6. This Complaint alleges sufficiently egregious misconduct perpetrated by or with the assistance of officers of the court, including attorneys and testifying experts, that severely undermined the integrity of judicial proceedings in the Bridgeport Superior Court and related federal and state court matters.

7. The misconduct consists of false sworn testimony, fabricated damages, procedural misrepresentations, and systemic abuse of court processes.

8. Venue is appropriate in the Southern District of New York because Defendants are residents of Westchester County, New York.

9. This Complaint is timely filed under Rule 60 because the Defendants' fraudulent machinations were only discovered in January 2025.

## JURISDICTION AND VENUE

10. Jurisdiction is proper under 28 U.S.C. § 1331 because this action arises under the Federal Rules of Civil Procedure, Rule 60(d)(3), presenting a federal question.

11. Venue is proper in this District under 28 U.S.C. § 1391(b) because Defendants Karen and Ismet Pupovic reside in Westchester County, New York; Attorney Brennen Maki is licensed in New York and performed acts relevant to this fraud in New York; and related proceedings have been litigated in this District.

12. Plaintiffs are entitled to equitable relief under Federal Rule of Civil Procedure 60(d)(3), which authorizes relief from judgment for fraud on the court, even beyond the time limitations of Rule 60(b)(3).

## PARTIES

14. Plaintiffs, DTS, Redemption, and Westfair are limited liability companies whose connective tissue to this case is that they are victims of the scheme perpetrated by the Defendants.

15. Defendant, Karen Pupovic, is a New York resident.

2

16. Defendant, Ismet Pupovic, is a New York resident.

## BACKGROUND

17. On or about January 28, 2022, Defendants, Karen and Ismet Pupovic, entered into a contract with DTS to purchase the property located at 101 Northwood Drive, Easton, Connecticut ("The Property") for $910,000.

18. On or about March 22, 2022, DTS filed a lawsuit against the Pupovics in the United States District Court for the District of Connecticut, docket number 3:22-cv-00422-JAM ("The Pupovic Breach of Contract Action").

19. In or about Aril 2022 Defendants answered DTS' complaint in The Pupovic Breach of Contract Action"). The Defendants asserted no counterclaims.

20. In or about April 2022, that lawsuit was voluntarily withdrawn, <u>without prejudice</u>, by DTS pursuant to Fed. R. Civ. P. 41(a)(2).

21. On or about June 30, 2022, the Pupovics filed a frivolous action in Hartford Superior Court (HHD-CV22-6157379-S) ("The Hartford Action") over DTS' voluntary withdrawal of The Pupovic Breach of Contract Action claiming to have prevailed in the action, and claiming damages vexatious litigation, abuse of process, and under CUTPA.

22. On or about November 23, 2023, the Pupovics initiated another frivolous action in Bridgeport Superior Court (FBT-CV23-6129303-S) ("The Bridgeport Action") against the Plainitffs. Defendants deliberately employed a method of service not authorized by Connecticut General Statutes and The Plainitffs never received service of The Bridgeport Action.

23. On June 21, 2024, in the Connecticut Superior Court at Bridgeport held a hearing unknown to, and without the appearance of, Plaintiffs.

24. The following factual allegations stem directly from such hearing in question.

3

## FACTUAL ALLEGATIONS

### A. The Perjury

25. At the June 21, 2024 hearing, Defendant Ismet Pupovic personally appeared testified that DTS had "*run off*" with a $90,000 deposit ("*we put down 90,000 to get the property, and then he ran off with our money,*" *see* Exhibit "**A**" page 4 at 26). Defendant Pupovic did not testify in any further detail as to how he did not come to "*get*" the Property, but from his testimony it is clear that he did not "*get*" The Property. Attached hereto and made a part hereof is a true and accurate copy of the transcript from the June 21, 2024 hearing annexed as Exhibit "**A**."

26. Mr. Pupovic's clear intent was to imply abscondment and loss of the funds at the hands of Plainitffs, of course while not "*get*[*ting*]" the property, resulting in a theft on behalf of Plaintiffs.

27. However, the indisputable record facts show that not only did Plaintiffs not "*run off*" with such $90,000 deposit, but also Plaintiffs never possessed the $90,000 funds in question nor ever had the ability to direct them into their possession.

28. Moreover, in fact, the Pupovics had already received that $90,000 back eight months earlier pursuant to a November 21, 2023 Hartford Superior Court order. Attached hereto and made a part hereof is a true and accurate copy of the Order annexed as Exhibit "**B**."

29. This fact was known to Defendants and their counsel, as evidenced by their filing of a Motion to Disburse Funds dated on Halloween, October 31, 2023. Attached hereto and made a part hereof is a true and accurate copy of the Motion to Disburse Funds annexed as Exhibit "**C**."

30. The Pupovics, through their testimony and silence, failed to inform the Bridgeport Superior Court that they had received this $90,000 back. This omission was material and intentional, as it created the false appearance that the $90,000 funds had been stolen by Plaintiffs.

31. Stated differently, Defendant Ismet Pupovic plainly and falsely testified under oath that Plaintiffs stole, embezzled or otherwise absconded with funds he paid to purchase a family home.

### B. Attorney Endorsement of False Testimony

4

32. During that same hearing, Attorney Brennen Maki reinforced the falsehood in open court: "*And in connection with the Diamond Tucker people running off with your money, as you put it . . .*" (Exhibit A, Page 5, at 26)

33. Attorney Maki's use of the phrase "*running off with your money*" functioned not merely as passive questioning but as a rhetorical endorsement of Mr. Pupovic's false statement, amplifying its credibility and embedding it in the judicial record. Neither Maki nor the Pupovics corrected the false statement.

34. Maki failed to take any remedial measures to correct the false sworn testimony despite his professional obligation under Rule 3.3(a)(3) of the Connecticut Rules of Professional Conduct.

35. However, the weight of evidence suggests that Maki did not correct Defendant Ismet Pupovic and his own repeated use of the false statements, because he himself had coached Defendant Pupovic into providing false testimony in a premeditated act of perpetuating a Fraud Upon the Court.

C. **Fabricated Expert Damages**

36. Defendants' expert witness, David Lake, incorporated the false $90,000 stolen funds claim into a damages model that concluded Defendants' damages were approximately $628,411.75.

37. The above $90,000 was never lost to the Pupovics and was knowingly returned to them.

38. Mr. Lake testified that Defendants' damages were due to a "*lost (sic) of the interest income*" to purchase a home with a down payment larger than the $90,000 alleged lost and stolen down payment which Defendants had paid and hoped to put down, and which he additionally arbitrarily inflated $102,000.

39. Mr. Lake then proceeded to claim the Defendants lost projected investment income ("*the interest income that he would've earned had he been able to invest that money*") on such supposed $102,000 inflated falsely claimed lost and stolen deposit, based on exponential compounding of long-term treasury yields assumptions over a 30-year period.

40. Even in the absence of the voidable fraudulent basis of the $90,000 deposit never lost to Defendants inherent in his "*calculations,*" Mr. Lake's calculation of "*lost interest income*" and future mortgage payments were recklessly speculative and not grounded in facts or evidence.

5

41. Aside from its basis in fraudulent testimony, this calculation was entirely speculative and it was not grounded in any evidence that 1) The Defendants had the "*lost*" funds they would have otherwise had, or that they would have been able to invest them if they had had used them to purchase a property 2) that down payment monies paid to purchase a home constitute a loss of such monies 3) that a 30-year horizon over which to exponentially compound investment returns on a hypothetical investment, necessarily resulting in awarding windfall profits dressed up as damages, was not arbitrarily and capriciously chosen.

42. Mr. Lake's presenting such "calculations" as an actual compensable loss was 1) misleading and reckless, but and moreover, given the predicate of such "calculations" was the knowingly false claim to a lost and stolen $90,000, 2) a knowing fraud upon the court for a scandalous monetary amount.

43. Mr. Lake's calculation of "*lost interest income*" and future mortgage payments were recklessly speculative and not grounded in facts or evidence so much so as to constitute another basis for fraud on the court independent from the aforementioned fraud on the court of Mr. Pupovic and Maki's perjury as to a stolen $90,000.

44. The above are facts that demonstrate a level of complicity in the Fraud which was malicious.

45. The court accepted these figures as true.

### D. Judicial Reliance

46. Judge Gould stated on the record that he found "*the testimony of the two witnesses* [Mr. Pupovic and Mr. Lake] *to be extremely credible*," that "*the calculations that he* [Mr. Lake] *made are -- are appropriate and -- and are easily understood, and his valuations are -- are -- are appropriate*," and that he thus was persuaded by the expert evidence. *See*, Exhibit "**A**." Page 12 at 23, Page 13 at 2).

47. These judicial statements confirm that the Court's final ruling was based directly on the false and misleading evidence discussed above and demonstrate that the misconduct pleaded herein warrants application of Fed. R. Civ. P. 60(d)(3), as set forth in the cause of action of this Complaint.

48. The judgment against DTS, including approximately $670,000 in damages, was entered after a default hearing at which no discovery had been conducted and no cross-examination had occurred.

49. The findings were made solely on the basis of the unchallenged — and false — testimony and exhibits presented by the plaintiffs. The presiding judge, Judge Gould, found both witnesses to be "*extremely credible*" and adopted their valuations in full directly based upon the false and fraudulent testimony.

### E. Consequences

42. The Court made a finding in favor of Defendants for approximately $670,000 in "*compensatory damages.*" *See*, Exhibit "**A**." Page 13 at 8)

43. Defendants recorded a *lis pendens* and Judgment lien based on the fraudulent judgment, testimony and suit.

44. These encumbrances have blocked any sale or refinancing of the property, rendering it a valueless asset and constant and continued damaging financial liability.

### COUNT ONE — FRAUD ON THE COURT (Fed. R. Civ. P. 60(d)(3))

45. Plaintiffs restate and incorporate the preceding paragraphs as if fully set forth herein.

46. The elements of a Fraud on the Court claim under Fed. R. Civ. P. 60(d)(3) are: (1) A scheme to subvert the integrity of the judicial process that constitutes more than ordinary litigation fraud; (2) Involvement of an officer of the court (attorney, court-appointed expert, or person acting in concert); (3) Intentional conduct such as knowingly false testimony, fabricated evidence, or other deliberate deception; (4) Actual deception of the court, such as the fraud prevented the court from adjudicating impartially or fully considering the case; and (5) Proof by the clear and convincing evidence standard. Additionally, there are (6) Equitable prerequisites: (a) that no other adequate remedy is available; (b) that Plaintiff exercised due diligence in discovering the fraud; and that (c) Fraud is recognized as a ground for relief.

47. The first element is met because Defendants engaged in a coordinated scheme to undermine the integrity of the judicial process, including presenting false testimony about a $90,000 deposit, fabricating damages calculations, and using those falsehoods to secure a judgment. The second element is met because officers of the court — specifically, Attorney Maki as an attorney and David Lake as a testifying expert — participated directly in and furthered the fraud.

7

48. The second element is met because officers of the court — specifically, Defendant Maki as an attorney and Defendant Lake as a testifying expert — participated directly in and furthered the fraud.

49. The third element is met because the misconduct was intentional: the false testimony and fabricated damages were knowingly advanced and never corrected, even though Defendants and their counsel knew they were untrue.

50. The fourth element is met because the court relied on this false testimony and expert analysis, expressly finding both witnesses credible and adopting their valuations in full, which resulted in an approximately $670,000 judgment.

51. The fifth element is met because the pleaded facts provide strong, detailed evidence of deliberate deception that, if proven, would satisfy the "clear and convincing evidence" standard.

52. The sixth element (a) is met because no other adequate remedy exists to clear the fraudulent judgment and remove the related encumbrances; (b) may require clarification to show that Plaintiff acted promptly upon discovering the fraud; and (c) is met because fraud on the court is a recognized ground for relief under Rule 60(d)(3).

53. The above-described conduct constitutes fraud on the court under Rule 60(d)(3), as it includes intentional and egregious deception, perpetrated by parties and their attorneys, which compromised the impartial functioning of the courts and satisfies all required elements.

54. Defendants made false sworn statements, endorsed them through counsel, supported them with fabricated or negligently prepared expert reports, and misrepresented procedural facts — all of which corrupted the adjudicative process.

55. Relief is warranted because:

   1. False testimony was central to judicial findings;

   2. Counsel knowingly misled the court;

   3. Expert testimony was factually and legally defective;

8

4. The proceedings were tainted across multiple jurisdictions;

5. There is clear and convincing evidence of systemic abuse of the court's processes.

6. Attorney Maki's conduct also violated Rule 3.3(b) of the Connecticut Rules of Professional Conduct, which requires a lawyer who knows that a fraud is being committed upon the tribunal to take reasonable remedial measures. His failure to act, despite knowing the factual inaccuracy of his client's claims, constitutes complicity in fraud on the court.

58. Defendants procured the judgment through deliberate, material fraud directed at the court itself. See facts *supra*.

59. The judgment is void and must be set aside.

60. The *lis pendens* and Judgment lien are products of the void judgment and must be nullified to make relief effective.

## COUNT TWO — DECLARATORY JUDGMENT (28 U.S.C. § 2201)

61. Plaintiffs restate and incorporate the preceding paragraphs as if fully set forth herein.

62. The elements of a Declaratory Judgment under 28 U.S.C. § 2201 are: (1) An actual, present controversy that is a definite and concrete dispute between the parties; (2) A showing that a declaration by the Court will fully resolve uncertainty and that the judgment will clarify legal relations and remove uncertainty; and (3) that an independent jurisdictional basis, such as diversity jurisdiction under 28 U.S.C. § 1332 or federal question under § 1331 (or supplemental jurisdiction) exists.

63. The first element is met because there is an actual, present controversy between the parties over whether the approximately $670,000 state court judgment — obtained through alleged fraud — is valid and whether the *lis pendens* and Judgment lien based on that judgment can continue to encumber Plaintiffs' property.

64. The second element is met because a declaration from this Court would resolve that uncertainty by confirming whether the judgment and resulting encumbrances are void, thereby clarifying the parties' legal rights and obligations.

65. The third element is met because there is an independent jurisdictional basis for this action: it arises under federal law, specifically Rule 60(d)(3), and may also be supported by diversity jurisdiction given the parties' differing states of citizenship.

66. Thus, an actual controversy exists and is ripe for a Declaratory Judgement over whether Mr. Pupovic provided false testimony under oath which resulted in the purported issuance of a default money judgement.

67. Plaintiff seeks a declaration that the purported default money judgment procured by fraud upon the court, as discussed *supra*, and any fruits of such judgment such as the encumbrances cited are void and of no effect.

### COUNT THREE — INJUNCTIVE RELIEF (Ancillary to Counts One and Two)

68. Plaintiff restates and incorporates the preceding paragraphs as if fully set forth herein.

69. The elements of injunctive relief are: (1) Likelihood of success on the merits of the underlying claim(s); (2) Irreparable harm absent injunction; (3) The balance of equities are in the movant's favor; and (4) The public interest favors the injunction.

70. The first element is met because Plaintiff has a strong likelihood of success on the merits of its fraud-on-the-court claim, supported by detailed allegations of intentional misconduct by witnesses, an attorney, and an expert, and by direct evidence that the court relied on their falsehoods.

71. The second element is met because each Plaintiff will suffer irreparable harm without an injunction: the fraudulent lis pendens and lien currently prevent the sale or refinancing of the property, causing ongoing harm that cannot be remedied by money damages alone.

72. The third element is met. The balance of equities strongly favors Plaintiffs. Plaintiffs are currently suffering immediate, concrete, and irreparable harm: the fraudulent lis pendens and lien have rendered their property at 101 Northwood Drive, Easton, Connecticut unsalable and un-refinanceable. This cloud on title has prevented Plaintiffs from accessing the equity in their home, has blocked legitimate sale opportunities, and

continues to damage Plaintiffs' financial position and creditworthiness. These harms compound daily and cannot be compensated adequately by money damages.

73. By contrast, Defendants will suffer no legitimate prejudice if the lis pendens and lien are dissolved. The undisputed record demonstrates that Defendants have already recovered the $90,000 deposit they falsely claimed was stolen, and that the judgment they seek to protect was procured entirely through perjury, attorney endorsement of false testimony, and fabricated expert damages. Defendants therefore have no bona fide property interest to protect; the only effect of continuing the encumbrances is to harass Plaintiffs and unlawfully leverage a fraudulent judgment for tactical advantage. Given the total absence of lawful benefit to Defendants and the severe ongoing injury to Plaintiffs, the equities weigh decisively in favor of injunctive relief.

74. The fourth element is met. The public interest overwhelmingly supports granting injunctive relief in this case. Public confidence in the judicial system depends on the assurance that court judgments and the enforcement tools they authorize, such as lis pendens and liens, are grounded in truth and obtained through fair process. When a judgment is procured through deliberate fraud on the court, continued enforcement of that judgment not only perpetuates a private injustice but undermines the integrity of the courts themselves.

75. Enjoining enforcement of the fraudulent judgment here will serve the public interest by: (1) Preventing the misuse of the lis pendens and lien process as a weapon to extort or pressure property owners based on false claims; (2) Protecting the marketplace for real property in Connecticut from titles clouded by knowingly fraudulent encumbrances; (3) Deterring litigants and attorneys from engaging in perjury, fabricating evidence, or endorsing false testimony; and (4) Affirming that courts will not permit their processes to be used as instruments of fraud.

76. Granting the requested injunction will thus not only remedy the specific harm to Plaintiffs but will promote the broader public policy of safeguarding the integrity of judicial proceedings and the property rights of all Connecticut homeowners.

77. Unless restrained, Defendants will continue to enforce the fraudulent judgment and maintain the encumbrances.

78. In the interest of justice, preliminary and permanent injunctions enjoining enforcement of the judgment and enjoining and nullifying the *lis pendens* and Judgment lien must enter.

### COUNT FOUR — APPLICATION TO DISSOLVE (Conn. Gen. Stat. §§ 52-325a, 52-326)

79. Plaintiffs restate and incorporate the preceding paragraphs as if fully set forth herein.

80. The elements of an action to dissolve a *lis pendens* under Connecticut state law are: (1) No probable cause exists to sustain the lis pendens or underlying claim, or that a showing that underlying claim/judgment is invalid; and (2) Procedural compliance with Connecticut statutory requirements: (a) Service of notice;(b) a filing of a motion for dissolution; and (c) a request for hearing.

81. The first element is met because the *lis pendens* and Judgment lien are based on a judgment obtained through fraud, meaning there is no probable cause to sustain them and the underlying claim is invalid.

82. The second element is met as the Defendants failed to follow the procedural steps required under Connecticut law — service of notice — and these allegations should be added to ensure compliance with statutory prerequisites.

83. If the Court declines to grant direct nullification, Plaintiffs seek dissolution of the lis pendens under Connecticut statutes.

### RESERVATION OF DAMAGES CLAIMS

84. Plaintiffs' damages are ongoing, unliquidated, and, therefore, not claimed herein.

85. Plaintiffs expressly reserve the right to pursue damages for the fraud and related misconduct in later proceedings.

86. Plaintiffs seek an Emergency Temporary Restraining Order and a Permanent Injunction, filed subsequent hereto, enjoining Defendants from maintaining, enforcing, recording, and/or engaging in any collection activity with respect to any *lis pendens* or Judgment lien against 101 Northwood Drive, Easton, Connecticut and from having any existing *lis pendens* or Judgment lien to no longer serve as effective notice of either a) a claim or b) the pendency of an action / claim.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request that the Court:

a. Enter judgment setting aside any judgment obtained by fraud on the court;

b. Issue appropriate declaratory relief and equitable relief under Rule 60(d)(3);

c. Grant an injunction preventing Defendants from enforcing or maintaining the *lis pendens* and Judgment liens,

d. Award costs and attorneys' fees;

e. Grant such other and further relief as this Court deems just and proper.

Dated: July 31, 2025

                                                                           _____
RODERICK D. WOODS, ESQ.
Roderick D. Woods, P.C.
Attorney for Plaintiffs
880 Third Avenue
Fifth Floor
New York, New York 10022
(212) 653-8754 (Tel.)
(212) 656-1555 (Fax)
Roderick.woods@rdw-law.com

13

## **VERIFICATION**

I, Sean Fillinich, declare as follows:

1. I am a resident of the Commonwealth of Virginia and an Authorized Representative of the Plaintiffs.

2. If called upon to testify, I would testify competently as to the matters set forth in the foregoing Verified Civil Complaint.

3. I verify under penalty of perjury of the laws of the United States of America that the factual statements in this Verified Civil Complaint are true and correct to the best of my knowledge and understanding. 28 U.S.C. §1746.

Executed on July 31, 2025

*Sean Fillinich*
Sean Fillinich
Authorized Representative for
Diamond Tucker St. Property, LLC,
Redemption, LLC, and
Westfair, LLC

# Verification

Final Audit Report                                                                 2025-08-01

| | |
|---|---|
| Created: | 2025-08-01 |
| By: | Roderick Woods (roderick.woods@rdw-law.com) |
| Status: | Signed |
| Transaction ID: | CBJCHBCAABAA-DE46FrwyRMQHsGZVduMEDqIQoCucn3K |

## "Verification" History

- Document created by Roderick Woods (roderick.woods@rdw-law.com)
  2025-08-01 - 1:23:09 AM GMT

- Document emailed to Sean Fillinich (sean@decfp.com) for signature
  2025-08-01 - 1:23:13 AM GMT

- Email viewed by Sean Fillinich (sean@decfp.com)
  2025-08-01 - 1:52:04 AM GMT

- Document e-signed by Sean Fillinich (sean@decfp.com)
  Signature Date: 2025-08-01 - 1:52:31 AM GMT - Time Source: server

- Agreement completed.
  2025-08-01 - 1:52:31 AM GMT

**Adobe Acrobat Sign**